T.C. Memo. 1998-247


UNITED STATES TAX COURT


HERMAN E. AND SHERI L. VILLARROEL, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 12618-97.                          Filed July 6, 1998.


Herman E. Villarroel and Sheri L. Villarroel, pro se.

<u>Matthew J. Fritz</u>, for respondent.


MEMORANDUM OPINION


DINAN, <u>Special Trial Judge</u>:   This case was heard pursuant
to the provisions of section 7443A(b)(3) and Rules 180, 181, and
182.[1]

---

[1]   Unless otherwise indicated, all section references are
to the Internal Revenue Code in effect for the taxable year in
issue.  All Rule references are to the Tax Court Rules of
Practice and Procedure.

Respondent determined a deficiency in petitioners' Federal income tax for 1994 in the amount of $2,327.

The issues for decision are: (1) Whether petitioners are required to include in their gross income any amount of a distribution from a qualified stock bonus plan; (2) whether the amount of the distribution which must be included in their gross income, if any, is subject to the section 72(t) additional tax; and (3) the amount and character of the gain that petitioners are required to include in their gross income from the subsequent sale of a portion of the distributed stock.

Some of the facts have been stipulated and are so found. The stipulations of fact and attached exhibits are incorporated herein by this reference. Petitioners resided in Terrace Park, Ohio, on the date the petition was filed in this case. All references to petitioner in the singular are to Sheri L. Villarroel.

Petitioner worked as an employee of Oral B Laboratories (Oral B), a subsidiary of the Gillette Company (Gillette), for at least 5 years as of October 1994. By reason of her length of employment, petitioner was eligible to participate in Gillette's employee stock ownership plan (ESOP) when it was established in 1990. Gillette made automatic contributions to the ESOP on her behalf. She was not permitted to make any contributions to the ESOP on her own behalf. The contributions and the earnings on the contributions were invested in a special class of Gillette

stock called Series C ESOP Convertible Preferred Stock (ESOP stock). Petitioner's account balance vested when she completed 5 years of service.

Petitioner decided to terminate her employment with Oral B in October 1994. On a distribution request form dated October 27, 1994, petitioner elected to receive payment of her entire account balance in the form of Gillette common stock plus the cash value of any fractional shares of such stock. As of September 30, 1994, the account had 15.1473 shares of ESOP stock which were convertible into 302.946 shares of Gillette common stock.

On or about December 12, 1994, the plan distributed to petitioner 302 shares of Gillette common stock with a fair market value of $73.19 per share at the time of distribution for a total fair market value of $22,105.71. The distribution also included cash in the amount of $217.39, representing the cash value of her fractional share of Gillette common stock plus the cash value of the dividends accumulated in her account between October 1, 1994, and the date of the distribution. Petitioner did not receive the cash because an equal amount was withheld for Federal income tax purposes.[2]

Petitioner sold a number of shares of Gillette common stock for $6,114.79 on December 20, 1994. On their 1994 return,

---

[2] Respondent allowed petitioners a withholding credit in the amount of $217 in the statutory notice of deficiency.

petitioners reported the entire proceeds from this sale as capital gain. They did not report the distribution from the ESOP on their 1994 return. In the statutory notice of deficiency, respondent determined that petitioner had received a taxable distribution in the amount of $9,320 which was subject to the section 72(t) 10-percent additional tax on qualified retirement plan distributions.

The first issue for decision is whether petitioners are required to include in their gross income any amount of the distribution of petitioner's ESOP account.

In general, an ESOP is defined as a stock bonus plan which meets the requirements of section 401(a). Sec. 4975(e)(7). Petitioners argue that petitioner's Gillette ESOP account was not a "retirement account" because it was "set up without her knowledge or consent", and she had "no choice in participating" in the plan. However, they introduced no documentary evidence which supports their position. To the contrary, letters received by petitioner as an ESOP participant from the plan as well as other documents submitted as evidence of her account balance convince us that the Gillette ESOP was a qualified stock bonus plan, and we so conclude.

Section 402(a) generally provides that any amount actually distributed from a section 401(a) qualified stock bonus plan shall be taxable to the distributee as provided in section 72.

Under section 72(e), the amount included in gross income equals the amount distributed to the distributee less the amount of any investment (i.e., contributions) made by the distributee.  Since petitioner made no contributions to her account, the amount includable under section 72, in the absence of any exceptions, would be equal to the total amount of the distribution.

However, section 402(e)(4) provides:

(4) Net Unrealized Appreciation.--

        (A) Amounts attributable to employee
contributions.-- * * *

        (B) Amounts attributable to employer
contributions.--For purposes of * * * [section 402(a)]
and section 72, in the case of any lump sum
distribution, which includes securities of the employer
corporation, there shall be excluded from gross income
the net unrealized appreciation attributable to that
part of the distribution which consists of securities
of the employer corporation. * * *

        (C) Determination of amounts and adjustments.--For
purposes of * * * [section 402(e)(4)(A) and (B)], net
unrealized appreciation and the resulting adjustments
to basis shall be determined in accordance with
regulations prescribed by the Secretary.

        (D) Lump sum distribution.--For purposes of * * *
[section 402(e)(4)], the term "lump sum distribution"
has the meaning given such term by * * * [section
402(d)(4)(A)] (without regard to * * * [section
402(d)(4)(F)]).

The phrase "securities of the employer corporation" includes shares of stock of a parent or subsidiary corporation of the employer corporation.  Sec. 402(e)(4)(E).  The net unrealized appreciation (NUA) in the securities is the excess of the fair market value of such securities at the time of distribution over

the cost or other basis of such securities to the plan. Sec. 1.402(a)-1(b)(2)(i), Income Tax Regs.

Petitioner's distribution constitutes a lump sum distribution because her entire account balance was distributed to her during her 1994 taxable year on account of her separation from service. Sec. 402(d)(4)(A)(iii). Petitioners are therefore entitled to exclude from their gross income an amount equal to the NUA in the 302 shares of Gillette common stock which were distributed to petitioner. This amount was determined by respondent, from information reported by the distributor, to be $13,002.30. We find respondent's determination on this point to be correct and reject petitioners' arguments to the contrary.

Based on the record, we find that petitioners failed to report a distribution from the Gillette ESOP in the amount of $22,323.10, of which $13,002.30 is attributable to the NUA in the Gillette common stock. Accordingly, we hold that they are required to include in their gross income the portion of the distribution, $9,320.80,[3] which is not attributable to the NUA.

---

[3] This amount equals the sum of the cash distributed in the amount of $217.39 and $9,103.41. The later figure is the excess of the fair market value of the stock at the time of the distribution over the NUA in the stock in the amount of $9,103.41. Petitioner's basis in the stock, for purposes of her subsequent sale of the stock, is equal to the amount of such excess. See sec. 1.402(a)-1(b)(1)(i), Income Tax Regs.

The second issue for decision is whether the amount of the distribution which must be included in petitioners' gross income is subject to the section 72(t) additional tax.

Section 72(t)(1) provides:

(1) Imposition of additional tax.--If any taxpayer receives any amount from a qualified retirement plan (as defined in section 4974(c)), the taxpayer's tax under this chapter for the taxable year in which such amount is received shall be increased by an amount equal to 10 percent of the portion of such amount which is includible in gross income.

The term "qualified retirement plan" includes any plan described in section 401(a), which includes qualified stock bonus plans such as the Gillette ESOP. Sec. 4974(c)(1). Section 72(t)(2) provides exceptions to the imposition of the additional tax with respect to certain distributions. Petitioners, however, have not proved that any exception applies in their case. We therefore hold that the portion of the distribution which we held must be included in their gross income is subject to the section 72(t) additional tax.

The third issue for decision is the amount and character of the gain petitioner must recognize from her sale of a portion of the Gillette common stock.

Section 61(a)(3) includes as gross income gains derived from dealings in property such as the sale of stock. The amount of the gain is the excess of the amount realized from the sale over the adjusted basis of the property at the time of the sale. Sec. 1001(a). The entire amount of the gain determined under section

1001(a) is recognized in the year of the sale with certain exceptions not applicable in this case.  Sec. 1001(c).

The amount realized from the sale is the sum of any money received plus the fair market value of any property received. Sec. 1001(b).  In this case, the amount realized by petitioner from the December 20, 1994, sale of Gillette common stock is $6,114.79.  In order to calculate the gain on the sale, we must first determine petitioner's adjusted basis in the shares which were sold on December 20, 1994.

Petitioner's adjusted basis in each share was $30.14.[4] Although the precise number of shares that were sold on December 20, 1994, is not revealed in the record, petitioner testified that the fair market value of the shares at the time they were sold was approximately $75 per share.  Based on her credible testimony and the fact that the shares were sold only 1 week after the distribution, at which time (i.e., the time of distribution) the fair market value was $73.19 per share, we accept her estimate of the fair market value of Gillette common stock on December 20, 1994.  After dividing the proceeds of the sale ($6,114.79) by the fair market value of the stock (approximately $75), we find that petitioner sold 82 shares on December 20, 1994.  Therefore, the adjusted basis in the 82

---

[4] This amount is calculated by dividing petitioner's aggregate basis in the Gillette common stock ($9,103.41) by the total number of shares (302).

shares equals $2,471.48 and the amount of gain realized from the sale equals $3,643.31.[5]

Finally, we must decide the character of the gain which must be recognized from the December 20, 1994, sale. The amount of the gain attributable to the NUA in the 82 shares of stock at the time of the distribution is treated as gain from a capital asset held for more than 1 year. Sec. 1.402(a)-1(b)(1)(i), Income Tax Regs.; see Rev. Rul. 81-122, 1981-1 C.B. 202; see also Notice 98-24, 1998-17 I.R.B. 5. The amount of the gain which exceeds the NUA at the time of distribution constitutes short-term capital gain, since petitioner's post-distribution holding period was not more than 1 year. Sec. 1.402(a)-1(b)(1)(i), Income Tax Regs.; see Rev. Rul. 81-122, supra; see also Notice 98-24, supra. Accordingly, we hold that petitioners must recognize long-term capital gain in the amount of $3,530.10 and short-term capital gain in the amount of $113.21 from petitioner's December 20, 1994, sale of Gillette common.

To reflect the foregoing,

Decision will be entered

under Rule 155.

---

[5] This amount is calculated by subtracting the adjusted basis of the 82 shares sold ($2,471.48) from the amount realized from the sale ($6,114.79).